James E. Wagman, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

556

Argued April 9, 1981, before President Judge CRUMLISH and Judges ROGERS and BLATT, sitting as a panel of three.

*Thomas F. Meister,* with him *Howard D. Miskey,* for petitioner.

*Charles G. Hasson,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Acting Attorney General, for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, June 8, 1981:

According to the Unemployment Compensation Board of Review's decision, James E. Wagman voluntarily terminated his employment without cause of a necessitous and compelling reason.[1] We affirm.

---

[1] Section 402(b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b)(1).

Wagman was an oil truck driver for more than two years and commuted some 32 to 36 miles to and from work each day. Absent either public transportation or a car pool, Wagman drove his own automobile. On January 23, 24 and 25, 1979, he was late for work because of mechanical problems with his 1973 Plymouth and was later unable to get to work because of the car's transmission ailments. For these absences, Wagman was issued a one-week suspension from work. At about this time, a personal bankruptcy was approved, and the Plymouth was repossessed by the finance company. Still on suspension, he then purchased a 1964 Chevrolet Impala for $75 on February 1, which stopped running the next day. Faced with having to find transportation, Wagman sought several unsuccessful alternatives. No fellow employees with whom he could ride were available, proposal to purchase a used company vehicle on installments was unsuccessful, and his request to borrow a company truck was denied because his employer lacked the necessary insurance coverage. Wagman then resigned on February 8. When the Chevrolet was repaired on February 17, Wagman was unsuccessful in getting his job back. He then filed for benefits.

After several hearings, the Board found that, although transportation problems could constitute a necessitous and compelling cause for voluntary termination, Wagman need not have quit his job. "He could have tried to remain employed and had his car repaired and then returned to work. Instead he quit his job, had his car repaired and then returned to work." We agree.

Clearly, the Board was accurate in relating Wagman's transportation problems as serious. However, transportation inconveniences must not only be so serious and unreasonable as to present a virtually

insurmountable problem but the claimant must demonstrate that he took reasonable steps to overcome the problems before severing employment. *Musquire v. Unemployment Compensation Board of Review*, 52 Pa. Commonwealth Ct. 137, 415 A.2d 708 (1980). Under the present circumstances, the question becomes whether Wagman was given an alternative to the quit.

Our review of the record reveals that a leave of absence, though not given as a rule, was possible, however no request was made to the employer. In addition, we have consistently held that voluntarily terminating employment because the possibility exists that one might be fired is insufficient to entitle a claimant to benefits. *Morris v. Unemployment Compensation Board of Review*, 57 Pa. Commonwealth Ct. 616, 426 A.2d 1269 (1981); *Hill v. Unemployment Compensation Board of Review*, 35 Pa. Commonwealth Ct. 252, 385 A.2d 1032 (1978).

Affirmed.

### ORDER

The Unemployment Compensation Board of Review order, dated November 21, 1979, reinstating the June 29, 1979 decision, is hereby affirmed.